Thank you, Your Honors. Good morning, Your Honors. My name is Michael Donahoe. I'm with the Federal Defender's Office from the Helena Branch of the Federal Defenders, and I'm here on behalf of Mr. Armbrister this morning. I've been attentive to the questions on the sentencing issue, and I think I'd like to address those first because it's a common issue. I recognize I'm here on a plain-air standard on this issue, and that may count for some difference here, but it seems to me that the questions that the panel has put to the litigants here are germane to my discussion as well. I want to talk for a second about Gonzales. Gonzales can't be authority for the government's position because the result that the government wanted to achieve there was a dismissal of the charge. So there would have been a vacation of the conviction and then a dismissal of the charge because the United States wanted that result. So there was really no occasion in Gonzales to get into the nuances of Rule 48. So it's not inexplicable as to why that case turned out the way it did, on top of which we have to bear in mind here that there was a vacation of the conviction and then a dismissal of the charge. But does it tell us anything about Rule 48 being applicable here? No, it doesn't. I mean, I think they relied on it, but all I'm suggesting is, is that in the end, the point was, was to have the gun charge dismissed based on the individual's cooperation. How do you distinguish Rinaldi, which the government says is stronger? Well, that here we have to bear in mind, I guess my response to that is, we have to bear in mind that the point of vacating the conviction is to have it available for reinstatement. So the conviction itself never goes away under the Davenport analysis. And I don't think Rinaldi's... That's true in the last paragraph, isn't it? And I don't think that Rinaldi speaks to that issue at all. We have to keep front and center here what the objective is. And it's to set aside the conviction, not sentence on it, but should something go wrong with the conviction that the individual is sentenced on, then that other conviction would be subject to reinstatement. All right. Having addressed those points, I'd like to turn attention in my remaining time to the suppression claim. I don't want to give up on this claim, Your Honors. I recognize that this looks like an uphill climb for me in light of Herring. I did my best to address that in the reply brief. But what I want to focus on here in particular is the Franks analysis. And say up front, Herring did nothing to change Franks. In fact, the language in Herring that addresses Franks that's probably dicta in its nature is quite strong and says that misrepresentations, things that aren't true in the search warrant application, still need to be addressed. Now, I carefully ‑‑ I'm sure Your Honors can appreciate this. I have a very experienced panel here. When you set cases aside for periods of time, when you plead the case, when you try the case, it lays dormant for a while and so on. I want to plug the panel into the fact that this case laid dormant for me for a little while. And recently I had to prepare it for coming here today. And I got to take a close look at the suppression hearing transcript. And in particular around pages 70 through 75, and then in the 80s around page 85 in the ER, and then back in the mid 90s, pages 95 and maybe a couple pages thereafter. And the gravamen of that testimony comes from the probation officer himself and the FBI agent. Now, we know from ER, I think, volume 2, page 332, paragraph 16 of the search warrant application says expressly that the individual in this case was released from probation on May 14th. It's a categorical statement. Now, if you read carefully the probation officer's testimony at or around pages 70 through 73, he says there, yeah, I talked to the FBI agent about this issue. But it wasn't about when he was released from probation. It was about the danger to which this man's wife may have been exposed because he had been released from custody because he was found not to be on probation. Now, if you just sit with that for a minute and you look at the categorical nature of the statement made in the search warrant application that says he was released on the 14th from probation, over and against what the probation officer is saying, that that really wasn't on the table when we were talking. We were talking about the danger factor to the woman. There's inconsistency there. All right. This is a very nuanced paragraph, this paragraph 16 in this search warrant application. And I submit to you, Your Honors, that there was an occasion here to remain in the dark. The FBI agent says in his testimony, had he known that this man was not on probation at the time of the search, that would have been a material point to him, and he would have done two things. He would have visited with the U.S. attorney about it, and he would have included all of that information in his search warrant application. So the materiality question, I don't think there is one. There isn't a question. The only issue here is, can we rely on the testimony as developed at the suppression hearing to believe that the government agent did not know that there may have been a problem with that original probation search? Didn't the court, in effect, make a credibility finding to that effect, that he believed the agent? No. First, there's no discussion of any inconsistency that I'm trying to develop here between the probation officer's testimony and the FBI agent's testimony. None. I mean, I think it's one thing to say broadly, yeah, the guy was in the witness box and he seemed credible to me. But there's no sifting or examination of this testimony, and I'm asking the Court to do that. There's no reconciliation of the stories that were presented by these individual witnesses as to the nature, the express nature of the discussion. In fact, the probation officer says categorically, that wasn't on my mind. I don't even remember if we had that discussion. And yet, oddly, in the search warrant application, there's an express statement. He told me that he was released on May 14th, which is incorrect. Because if you look at the ‑‑ What's incorrect, that he told them or that is the actual date? As to the actual date, at least by one day. But it could be correct that that's what he heard. Right. But I'm saying as to one day. If this conversation took place on May 21st, and we know that it did, that's pretty close in time to when that revocation petition was withdrawn. That probation officer knew in his own mind that that was a relevant date, the 15th. Why would he tell him, the FBI agent, that is, that it was the 14th? It's a pretty big mistake. And I'm saying that that consistency is rubbing in a fashion that should give the Court pause to say, what was the story here? And if you think about how easy it would have been to determine that he was not on probation, by the probation officer's own admission, he says, I figured it was self‑executing. On reflection, when I got the data from the prison, I knew he was done. Now, if that's the case, and the magistrate judge would have known that, this search warrant is not going to issue. She's at a minimum going to want more data about when he was discharged, the efficacy of the state probation search, and so on. And that material should have been included in this application. And that's why Herring does not present a problem here. Thank you, counsel. We'll hear from the government. May it please the Court and counsel. Again, I'm Marcia Hurd from the District of Montana. This was my case below, and I handled it and assisted in writing the brief. The one difference, obviously, between this case and the Hector case we just argued that is going to be very difficult for Mr. Donahoe to get around is that he did not object, as Hector did. Did not raise the issue about Rule 48 in the motion to dismiss. In fact, he concurred in the dismissal. So anything that you do with regard to that first issue is on plain error review. I think he acknowledged that. Yes. With regard to the suppression hearing, there are a couple of things that the Court should note in response to what Mr. Donahoe has just said. And the first is the paragraph he's referring to is at ER 332. It's paragraph 16 of the search warrant. And it's a very short paragraph, and it simply says, on May 21, 2007, your affiant, who is Kevin Damuth from the FBI, learned from Montana State Probation and Parole Officer Michael Touche that on May 14, 2007, Armbrister was released from supervision. The release was due in part to a miscalculation by the Montana State Prison regarding the discharge date of his sentence. Now, today, the argument is that that's an untruth, that he wasn't told that. But yet the Court made a specific finding of fact at ER 38 in the Court's decision. And the top of ER 38, it says in the judge's order, Officer Touche testified that he formally released defendant from supervision on May 14, 2007. And so Officer Touche's testimony at the suppression hearing was completely consistent with what he told Agent Damuth and what is reflected in paragraph 16 of the search warrant. In addition to that, Judge O'Scanlan, you are correct that Judge Lovell made a specific finding at ER 39 that he found Agent Damuth to be a credible witness, and the Court accepts his testimony that he did not know the defendant was not supposed to be under supervision on the date of the probation. And so Judge Lovell, as a probation officer, conducted the search. And so we've got not only a fact that's in the Court's finding in support of paragraph 16, we've also got the Court's credibility determination here as well. And then we go to the kind of the second, the fallback argument, that the search warrant would not have been issued by the magistrate judge if, in fact, she had known this issue. But the district court also made a specific finding about the source, which we know to be Armbrister's wife, Shirley Armbrister's testimony, and the fact that her testimony to the agent two weeks later, which is reflected in the search warrant, was attenuated enough from any problem with the warrantless probation search that it would support probable cause as well. So even if the magistrate judge had been told that on the date in question this defendant was actually not on supervision because of this 18-month mistake by the Montana State Prison, there was all of that testimony firsthand, eyewitness testimony from Shirley Armbrister about the fact that she had seen him accessing child pornography on a number of occasions, that he had sexually abused other children and all of those kinds of things. So we've got that follow-up as well as an independent basis for the issuance of this search warrant. So I think that Herring v. the U.S. is really on point here. I mean, it was decided after the defendant's opening brief was filed. And Herring basically said, you know, a mistake, which is exactly what happened here, that doesn't rise to a systemic level or something in bad faith, is not a basis for suppression. And I think that's a good point. Kennedy. What if that cause of Shirley's testimony was really promoted by the search? The cat was out of the bag, so she went and told everything. If there's a causal connection between an illegal search and then the spilling out of all this damaging information, why isn't that a kind of a fruit of the poison tree problem? Because what the Supreme Court has said and this Court has said is that when there is a attenuation between those two things, which in this case the district court found was a several-week period of time between the search and her coming forward to Agent Damath, then that taint of any fruit of the poisonous tree is purged. And the district court found that at excerpts of record page 41. The district court was citing the Cicilline case, which is, you know, one of the cases that talks about this attenuated basis, and the fact that we've got a live witness here that came forward and made these statements and made this information known to law enforcement. But it still could be suppressed if, in fact, the causal connection was not sufficiently attenuated. And here, the district court made a factual finding that it was sufficiently attenuated, and so, therefore, that it was ---- Is that a question of fact or a question of law? I believe it's a question of fact. And I believe that the district court made that factual finding based on listening to the agent, listening to the probation officer, and actually surely testified in this case about the situation and about when she made the report and how she was questioned. And so I believe that's a factual finding that this Court has to review then under a very discretionary standard given Judge Lovell's finding. Any other questions from the Court? No questions, counsel. Thank you. Mr. Donahue, you had about a half a minute left. Your Honor, I guess I want to address this business about Judge Lovell's finding, and I recognize that's a clear air standard and that's tough for me. But the question here revolves around when was he released from probation? That's a legal question. And in the end, the probation officer says at ER 1, page 85, on reflection, when I got the data back from the prison, I determined that he was released. It was a self-executing release. It's not like we do in Federal court where the individual is brought before the court on a paper application. He's at the end of his term, and the district judge signs the order and releases him from supervised release. That's not what happens in State court. And that's borne out in the reply brief where I indicate that there was no jurisdiction to hear the revocation paper. So he was done in September of 2005. All right. Thank you, counsel. The case just argued will be submitted for decision, and we will hear argument next in United States v. O'Chief.
judges: Goodwin, O'scannlain, Fisher